## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-477

BRANDON RIETHEIMER
and those similarly situated,

       Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,

       Defendant.

---

## DEFENDANT'S NOTICE OF REMOVAL

       PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant United Parcel Service, Inc. ("UPS") hereby removes this action from the District Court for Adams County, Colorado to the United States District Court for the District of Colorado. In support of this Notice of Removal, UPS states the following:

### PROCEDURAL BACKGROUND

       1.     Plaintiff Brandon Rietheimer ("Plaintiff") commenced this action on January 1, 2023 by filing a Complaint against UPS on behalf of himself and "those similarly situated" in the District Court for Adams County, Colorado, where it was assigned case number 2023CV30000. UPS was served with the Complaint on January 19, 2023.

       2.     On February 3, 2023, the District Court for Adams County granted UPS' unopposed motion for a two-week extension to respond to the Complaint. As a result, the new deadline to respond to the Complaint was February 23, 2023.

3.      On February 13, 2023, Plaintiff filed the First Amended Complaint (referred to as "Complaint" or "Compl." below) in the District Court for Adams County, Colorado. The deadline to respond to the First Amended Complaint in the District Court for Adams County is February 27, 2023.

4.      Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served on UPS in the state action are attached to this notice as **Exhibits C-K.**

## GROUNDS FOR REMOVAL

5.      This action is removable under 28 U.S.C. § 1441(a) because the U.S. District Court has original jurisdiction over the claims under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and Section 301 of the Labor Management Relations Act ("LMRA"), 28 U.S.C. § 185. Specifically, Plaintiff's First and Second Claims for Relief (involving the putative "HFWA Class" referenced in the Complaint) are subject to this Court's jurisdiction under CAFA and Plaintiff's Third Claim for Relief (involving the putative "Full-Time Class" referenced in the Complaint) is subject to this Court's jurisdiction under the LMRA, and CAFA.

**I.      This Court has jurisdiction over Plaintiff's first and second claims under CAFA.**

6.      CAFA amended 28 U.S.C. § 1332 to allow removal of putative class actions where (1) the number of proposed class members is at least one hundred, (2) any member of the proposed class is a citizen of a state different from that of any defendant, and (3) the amount in controversy exceeds five million dollars, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d).

7.      Plaintiff brings claims on behalf of two putative classes: First, "[r]esidents of Colorado who were employed with Defendant UPS under the Central Region CBA and worked in interstate commerce and were not provided paid sick leave in 2021, 2022, and 2023." Compl. at ¶

70. Plaintiff refers to this group as the "HFWA Class." *Id.* Second, "[r]esidents of Colorado who were employed with Defendant UPS since September 1, 2022 as RPCDs [regular full-time package drivers] or 22.4 Combination Drivers as defined by Article 22 of the CBA." *Id.* Plaintiff refers to this group as the "Full-Time Class." *Id.* Claims One and Two (Compl. ¶¶ 99-109) involve the HFWA Class and are subject to removal under CAFA. In addition, Claim Three is subject to removal under CAFA.

### A.    Putative Class Size

8.    By Plaintiff's own admission, the HFWA Class is estimated to include approximately 6,000 individuals.[1] Compl. at ¶ 71. This putative class is sufficiently large to satisfy the first criterion for removal under CAFA. *See* 28 U.S.C. §§ 1332(d)(5)(B).

### B.    Diversity

9.    The state action satisfies CAFA's diversity requirements. According to the Complaint, Plaintiff is and was domiciled in Denver, Colorado. Compl. at ¶ 4. He is thus a citizen of Colorado. *See Vincent v. Nelson*, 51 F.4th 1200, 1211-12 (10th Cir. 2022) (explaining a party's domicile determines their state of citizenship). UPS is organized under the laws of Ohio and its principal place of business is in Georgia. Compl. at ¶ 1; *see also* Exs. A and B to this Notice; Declaration of Daniel Graham in support of Notice of Removal ¶¶ 2-3. UPS is thus a citizen of Ohio and Georgia. 28 U.S.C. § 1332(c)(1); *see Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010) (adopting "nerve center test" and explaining a corporation's principal place of business is

---

[1] A preliminary review of UPS records indicates that over 12,000 individuals worked for UPS in Colorado at some point between January 1, 2021 to the present, potentially increasing the putative class size and the amount in controversy calculations. UPS is still gathering data and evaluating the putative class size. Dennis Messer Declaration in support of Notice for Removal ("Messer Decl.") at ¶ 6.

"typically" its headquarters). Because Plaintiff and Defendant are citizens of different states, minimal diversity exists for purposes of CAFA removal.

### C.  Amount in Controversy

10.    Defendants are entitled to present their own estimate of the amount in controversy. *See Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012). "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). As set out in more detail below, UPS alleges the total amount in controversy here exceeds five million dollars, exclusive of interest and costs.[2] As such, the case satisfies CAFA's amount in controversy requirement. *See* 28 U.S.C. § 1332(d)(6).

11.    Specifically, the Complaint alleges two causes of action on behalf of the putative HFWA Class. The first claim alleges violations of the Colorado Healthy Families and Workplaces Act. *See* Compl. at ¶¶ 99-104. The second alleges violations of the Colorado Wage Claim Act. *See* Compl. at ¶¶ 105-109.

12.    Plaintiff asserts that, throughout 2021, 2022, and 2023, members of the putative HFWA Class should have accrued one hour of paid leave for every thirty hours worked up to forty-eight hours per year. Compl. at ¶ 101. Plaintiff also claims UPS did not provide him or members of the putative HFWA Class paid sick leave in 2021, 2022, and 2023. Compl. at ¶¶ 102-103. According to Plaintiff's allegations, sick leave qualifies as a wage; thus, Plaintiff claims, he and

---

[2] By estimating the amount in controversy for purposes of removal, UPS does not concede that it engaged in any improper conduct as alleged in the Complaint, that this action is maintainable as a class action, or that Plaintiff or any members of the putative class(es) he seeks to represent are entitled to recover anything from UPS whatsoever. UPS reserves the right to dispute Plaintiff's claims with respect to both liability and damages.

members of the putative HFWA class are owed compensation for the paid sick leave they were allegedly denied. Compl. at ¶¶ 100-104.

13.     Plaintiff alleges he was not properly paid for two days of sick leave in 2021, another two days of sick leave in 2022 and a sick day in 2023. *See* Compl. at ¶¶ 44, 52, and 62-63. He maintains his claims are "typical" of those of other members of the HFWA Class. Compl. at ¶ 73.

14.     Assuming Plaintiff's claim that he was not paid for two days of sick leave in 2021, another two days in 2022, and one day in 2023 is typical (as he claims), the *minimum* amount in controversy for 2021 is $1,182,720, the *minimum* amount in controversy for 2022 is $1,205,760, and the *minimum* amount in controversy for 2023 is $655,200. Taken together, the amount of wages in controversy between 2021, 2022, and 2023 totals at least $2,388,480.[3] This is based on the following calculations:

- For 2021 and 2022, 2 days sick leave X 8 hours per day = 16 total hours per person per year

- For 2021 and 2022, 16 hours per person X 6,000 putative class members = 96,000 total hours per year

- 96,000 total hours X Colorado's 2021 minimum wage rate[4] ($12.32/hour) = $1,182,720 total in controversy for 2021

---

[3] These calculations are based on Plaintiff's contention he was not paid for two sick days in 2021 and 2022 and one sick day in 2023 (i.e., the lost wages calculations here assume Plaintiff seeks compensation for forty total hours). To the extent Plaintiff alleges he and each member of the putative class are owed wages for up to forty-eight hours of sick time *each year* because they did not accrue sick time as required under Colorado law (*see e.g.,* Compl. ¶ 21), this estimated amount of wages in controversy increases significantly from 40 hours per person to 144 hours per person. So too, would the total amount in controversy, which flows from these calculations.

[4] Colorado's minimum wage rate is set forth at https://cdle.colorado.gov/wage-and-hour-law/minimum-wage.  The minimum wage rate is the lowest amount that could be asserted for Plaintiff's claims.

- 96,000 total hours X Colorado's 2022 minimum wage rate ($12.56/hour) = $1,205,760 total in controversy for 2022

- For 2023, 1 day of sick leave X 8 per day = 8 hours per person

- For 2023, 8 hours per person X 6,000 putative class members = 48,000 total hours

- 48,000 total hours X Colorado's 2023 minimum wage rate ($13.65/hours) =$655,200 total in controversy for 2023

- $1,182,720 + $1,205,760 + $655,200 = **$3,043,680 total wages at issue**[5]

15.     In addition to the wages at issue, Plaintiff seeks penalties imposed by Colorado law for failure to comply with the Wage Claim Act. *See* Compl. at ¶ 115(d). Specifically, in 2021 and 2022, Colorado law imposed the following penalties on employers that failed to make payment within fourteen days after receiving a written demand for payment of wages:

- 125% of the amount of unpaid wages up to and including $7,500; and

- 50% of the amount of wages exceeding $7,500.

C.R.S. § 8-4-109(3)(b)(I) (amended effective Jan. 1, 2023).  As of January 1, 2023, the law imposes penalties of either twice the amount of unpaid wages or $1,000, whichever is greater. C.R.S. § 8-4-109(b)(I). For 2021 and 2022, if an employee can show the employer's failure to pay is willful, the penalties increase by fifty percent. *See* C.R.S. § 8-4-109(3)(b)(II) (amended effective Jan. 1, 2023).  Effective January 1, 2023, if the employee can show the employer's failure or

---

[5] Using the Colorado minimum wage rate likely underestimates the total amount in controversy because UPS pays members of the putative HFWA Class at a much higher hourly rate. Plaintiff, for example, was paid $20.50 per hour in 2021 through approximately October 30, 2021. Plaintiff's hourly rate of pay increased to $27.00 in approximately September 2022.  On or around January 16, 2023, Plaintiff's hourly rate of pay decreased to $26.00. *See* Messer Decl. at ¶ 4.  UPS's minimum hourly pay rates for fulltime employees in Colorado was $20.50 in 2021 and 2022. *See id.* at ¶ 5.  UPS's minimum hourly pay rates for part-time employees in Colorado was $14.50 in 2021, and $15.00 in 2022.  *Id.*

refusal to pay was willful, the penalty increases to three times the amount of unpaid wages or $3,000, whichever is greater.

As explained above, UPS estimates the wages in controversy for 2021 and 2022 to be $2,388,480[6] (a number far in excess of $7,500). So, the total penalties for 2021 and 2022 at issue may be calculated as follows:

| Estimate of wages in controversy | Penalty rate | Total penalty in controversy |
|---|---|---|
| First $7,500 | 125% | $9,375 |
| Remaining $2,380,980 | 50% | $1,190,490 |
| | Total Penalties for 2021 & 2022 | $1,199,865 |

For 2023, an estimate for the amount of total penalties in controversy would be $655,200 X 2, which totals $1,310,400. Thus, the total amount of penalties in controversy for 2021-2023 is **$2,510,265.**

16.     In addition to these penalties, C.R.S. § 8-13.3-411 provides that employers who violate the HFWA are "liable for back pay and other relief as provided by section 8-5-104(2)(a) and (2)(b)." This includes liquidated damages, which are equal to the amount of the employee's economic damages (here, wages). *See* C.R.S. §§ 8-5-104(1)(a) & 8-5-104(2)(a). Thus, Plaintiff's potential liquidated damages here equal $**3,043,680** —the amount of lost wages placed at issue by Plaintiff.

17.     Finally, Plaintiff seeks attorneys' fees. Compl. at ¶ 115(e). Attorneys' fees are properly included when determining the amount in controversy under CAFA. *See Woodmen of World Life Ins. Soc'y*, 342 F.3d 1213, 1218 (10th Cir. 2003) (explaining that because the statute

---

[6] This is $1,182,720 + $1,205,760 which equals $2,388,480.

requires awarding attorneys' fees to a prevailing claimant, potential attorneys' fees "should have been considered in determining whether [a party] satisfied the jurisdictional amount"); Colo. Rev. Stat. § 8-5-104(2)(b) (providing that employers who violate the HFWA are liable for attorney fees); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."). Based on publicly available information regarding attorneys' fees in class action settlements, Plaintiff's attorneys may be awarded attorney's fees equal to 25% of the damages award. *See, e.g.*, *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1009 (D. Colo. 2014) ("Though the monetary amount of fees is significant, the percentage of fee requested (24.7% of the Settlement Fund) falls within the norm for these types of cases.").

18.    Based on the above, UPS estimates the total amount in controversy to be—at minimum—$9,397,031.25.[7] This amount satisfies CAFA's amount-in-controversy threshold requirement. *See* 28 U.S.C. § 1332(d)(2).

| Category | Estimated Amount in Controversy |
|---|---|
| Lost wages | $3,043,680 |
| Statutory penalties | $2,510,265 |
| Liquidated damages | $3,043,680 |
| **Total damages** | **$8,597,625** |
| Attorneys' fees (25% of the amount in controversy) | $2,149,406.25 |
| **Total amount in controversy** | **$10,747,031.25** |

[7] UPS has not included an estimate for the Third Claim for Relief, which is subject to removal under Section 301 of the Labor Management Relations Act. UPS notes, however, that the Third Claim of Relief would also be removable under CAFA jurisdiction and would only increase the amount in controversy listed above. In addition, the number of employees included in the putative class is potentially higher than Plaintiff alleges. *See* Messer Decl. at ¶ 6.

**D.      None of CAFA's jurisdictional exceptions bar removal of this case.**

19.      Under CAFA, a federal court must decline to exercise jurisdiction over class actions where (1) more than two-thirds of the proposed plaintiff class members are citizens of the state in which the action was originally filed, (2) at least one defendant is a citizen of the state in which the action was originally filed, *and* (3) the principal injuries resulting from the alleged conduct were incurred in the state where the action was originally filed. See 28 U.S.C. § 1332(d)(4)(A).

20.      This action does not meet these requirements: UPS is not a citizen of Colorado, where the action was originally filed. Compl. at ¶ 1.

21.      Nor do any of CAFA's subject-matter exceptions to federal jurisdiction apply; the Complaint does not involve claims related to securities or corporate governance. *See* 28 U.S.C. §§ 1332(d)(9), 1453(d) (both explaining § 1332(d)(2) does not apply to cases arising under certain sections of the Securities Act of 1933, the Securities Exchange Act of 1934, or state corporate governance laws).

**II.      Plaintiff's third claim is removeable under Section 301 of the LMRA.**

22.      Section 301 of the Labor Management Relations Act ("LMRA") grants federal courts jurisdiction over suits alleging violations of collective bargaining agreements. *See* 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce … may be brought in any district court of the United States having jurisdiction of the parties"); *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 560 (1968).

23.      Plaintiff's Third Claim alleges that UPS failed to pay members of the Full-Time Class wages as agreed by UPS and the Union. Compl. at ¶¶ 110-114. Specifically, Plaintiff alleges

UPS "agreed to pay Plaintiff and Full-Time Class members eight hours of straight-time pay for each day worked, regardless of actual hours worked." Compl. at ¶ 111. Plaintiff styles this claim as an alleged violation of Colorado's Wage Claim Act. *See* Compl. at ¶¶ 113-114. However, at base, the Claim alleges a breach of the parties' collective bargaining agreement ("CBA"), going as far as quoting the CBA language in paragraphs 30 and 32 of the Complaint to support the claims:

> ¶ 30: In ARTICLE 22[] FULL-TIME COMBINATION AND PART-TIME EMPLOYEES of the CBA, regular full-time package drivers (known as "RPCDs") working a Monday through Friday schedule "***shall be guaranteed five (5) consecutive days of eight (8) consecutive hours per report and forty (40) straight time hours of straight time pay each week, if reporting each day as scheduled, as long as work is available***."

> ¶ 32: Also in ARTICLE 22 of the CBA, full-time combination drivers (known as "22.4 Combination Drivers") "***shall be guaranteed eight (8) consecutive hours of straight time pay per day, if reporting as scheduled." And: "All 22.4 combination drivers shall work a five (5) consecutive day schedule of Tuesday through Saturday or Wednesday through Sunday***."

(Emphasis added). *Compare with* Messer Decl. at ¶ 3, Ex. A to Messer Decl. (CBA Art. 22 § 4(b)).

24. The "agreement" on which Plaintiff's claim is based is the CBA, which, as quoted in the Complaint, provides that Regular Full-Time Package Drivers (i.e., members of the Full-Time Class) who work Monday through Friday "shall be guaranteed five consecutive days of eight consecutive hours per report and forty straight time hours of straight time pay each week, if reporting each day as scheduled, as long as work is available." Messer Decl. at ¶ 3, Ex. A to Messer Decl. (CBA Art. 22 § 4(b)(1)). The CBA also provides that "22.4 combination drivers" "shall be guaranteed eight consecutive hours of straight time pay per day, if reporting as scheduled." *Id.* (CBA Art. 22 § 4(b)(5)).

25.     Accordingly, Plaintiff's third claim is nothing more than a thinly veiled claim that UPS violated the CBA by failing to pay employees the guaranteed eight (8) hours of straight-time pay.[8]  This is further supported by the fact that the alleged right to eight (8) hours of guaranteed pay arises solely from the CBA, not state law. Where, as here, a complaint alleges violations of a CBA, there is federal jurisdiction. *See Johnson Builders Inc. v. United Brotherhood of Carpenters & Joiners, Loc. Union No. 1095*, 422 F.2d 137, 139, 141 (10th Cir. 1970) (affirming denial of motion to remand because claim alleging breach of CBA was removable); *Swift & Co. v. United Packinghouse Workers of Am.*, 177 F. Supp. 511, 513-14 (D. Colo. 1959) (denying motion to remand claim seeking damages for alleged breach of CBA).

**III.     All other statutory requirements for removal are met.**

26.     Removal of this action is timely under 28 U.S.C. § 1446(b) because UPS files this Notice of Removal within thirty days of receiving a copy of the initial pleading. *See also Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (time period for removal begins when defendant is served). Plaintiff served UPS on January 19, 2023; thus, the last day on which UPS may remove this action is February 21, 2023 given the federal holiday on February 20, 2023 for Washington's Birthday. *See* Fed. R. Civ. P. 6(a) (explaining that when a period is stated in days, the day of the triggering event is excluded and the last day of the period is included, "but if the last day is a Saturday … the period continues to run until the end of the next day that is not a

---

[8] Plaintiff alleges that: (i) he is "subject to the CBA as are the class members;" (ii) he "was not paid straight pay like the class members;" and (iii) he "did not, but should have, received eight hours of straight-time pay on days when Defendant UPS assigned him less than eight consecutive hours of work." Compl. ¶ 85; *see also* Compl. ¶¶ 26-29 (alleging that the CBA applies to all unionized employees in Colorado).

Saturday, Sunday, or legal holiday"); *Navarrete v. Hidalgo-Mendoza*, No. 20-CV-01910-CMA-STV, 2021 WL 838269, at *2 (D. Colo. Mar. 5, 2021).

27.     This Court is the United States District Court for the district and division "embracing the place where [the state court] action is pending," and is therefore the appropriate venue. *See* 28 U.S.C. § 1441(a).

28.     Pursuant to 28 U.S.C. § 1446(d), UPS is serving a copy of this Notice of Removal on Plaintiff and filing notice of this removal with the Clerk of the District Court for Adams County, Colorado.

29.     Pursuant to 28 U.S.C. § 1446(a), copies of all process and pleadings filed in this case and found in the files of the District Court for Adams County, Colorado are attached to this Notice.

30.     Accordingly, UPS respectfully submits that this action is properly removed to this Court. In filing this Notice, UPS does not intend to make any admissions of fact, law, or liability, and reserves all defenses, motions, and pleas.

DATED this 21st day of February, 2023.

Respectfully submitted,

**PERKINS COIE LLP**

By: *s/T. Markus Funk*

    T. Markus Funk, Bar No. 43500
    Daniel Graham, Bar No. 45185
    MFunk@perkinscoie.com
    DGraham@perkinscoie.com
    1900 Sixteenth Street, Suite 1400
    Denver, Colorado 80202-5255
    Telephone: +1.303.291.2300
    Facsimile: +1.303.291.2400

Attorneys for Defendant UNITED PARCEL
SERVICE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2023, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to the

following e-mail addresses:

> Sara N. Maeglin
> J. Bennet Lebsack
> Lowrey Parady Lebsack, LLC
> 1490 Lafayette Street, Suite 304
> Denver, CO 80218
> sm@lowrey-parady.com
> ben@lowrey-parady.com

> *s/T. Markus Funk*
>  T. Markus Funk, Bar No. 43500
>  Daniel Graham, Bar No. 43500
>  MFunk@perkinscoie.com
>  DGraham@perkinscoie.com
>  PERKINS COIE LLP
>  1900 Sixteenth Street, Suite 1400
>  Denver, Colorado 80202-5255
>  Telephone: +1.303.291.2300
>  Facsimile: +1.303.291.2400
>
>  Attorneys for Defendant UNITED PARCEL
>  SERVICE, INC.