| | DATE FILED: January 1, 2023 9:00 AM |
|---|---|
| DISTRICT COURT, ADAMS COUNTY, COLORADO<br>1100 Judicial Center Drive<br>Brighton, Colorado 80601 | FILING ID: 1913094E723C0<br>CASE NUMBER: 2023CV30000 |
| **BRANDON RIETHEIMER**<br>**and those similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED PARCEL SERVICE, INC.**<br><br>Defendant. | ♦ COURT USE ONLY ♦ |
| *Attorneys for Plaintiffs:*<br><br>Sara N. Maeglin, #49943<br>J. Bennet Lebsack, #45206<br>Lowrey Parady Lebsack, LLC<br>1490 Lafayette Street, Suite 304<br>Denver, CO 80218<br>Phone: (303) 593-2595<br>Fax: (303) 502-9119<br>sm@lowrey-parady.com<br>ben@lowrey-parady.com | CASE NO:<br><br>DIVISION: |
| **COMPLAINT** | |

Defendant United Parcel Service, Inc. ("Defendant UPS"), a "customer first, people led, innovation driven" company that ships and delivers packages, is a large employer throughout Colorado. Many of its employees are unionized and subject to collective bargaining agreements.

Starting on January 1, 2021, Colorado's Healthy Families and Workplaces Act required Defendant UPS to provide employees with one hour of paid sick leave for every thirty hours worked, up to forty-eight hours per year. But Defendant UPS did not. It only provided unpaid sick leave in 2021. And through most of 2022, Defendant UPS provided its employees with unpaid sick leave.

Defendant UPS also underpays full-time employees. Under its collective bargaining agreements with employees, Defendant UPS is obligated to pay full-time employees, like Plaintiff, eight hours

1

EXHIBIT C

of pay per day worked. But in September 2022, Defendant UPS began paying full-time employees less than eight hours per day worked.

Plaintiff brings this action on behalf of himself and putative classes to recover wages under the Colorado Healthy Families and Workplaces Act and the Colorado Wage Claim Act.

## PARTIES

1. Defendant UPS is an Ohio corporation that has its principal place of business located at 55 Glenlake Pkwy NE, Atlanta, Georgia 30328.

2. Defendant UPS employs Plaintiff and those similarly situated at its worksite located at 5020 Ivy St., Commerce City, Colorado 80022 (hereafter "Commerce City worksite").

3. Defendant UPS has purposefully availed itself of the privilege of conducting business in Colorado and this Complaint arises out of the Defendant's contacts with Colorado.

4. Plaintiff Brandon Rietheimer is a resident of and is domiciled in Denver, Colorado. His address is 2775 W. Iliff Ave., Denver, Colorado 80219.

5. At all material times, Plaintiff has been an "employee" as defined by the Colorado Healthy Families and Workplaces Act ("HFWA"). C.R.S. §§ 8-13.3-402(4), 8-4-101(5).

6. At all material times, Defendant has been an "employer" as defined by HFWA. C.R.S. §§ 8-13.3-402(5)(a), 8-4-101(6).

## JURISDICTION AND VENUE

7. The Court has jurisdiction over this case under Colo. Const. Art. 6 § 9 and the parties under C.R.S. § 13-1-124(b).

8. Under C.R.C.P. 98(c), venue is proper in Adams County because Defendant UPS is found in Adams County and Plaintiff has alleged that Defendant UPS violated his rights in Adams County.

9. Under C.R.C.P. 98(b), venue is also proper in Adams County because Defendant UPS is subject to a penalty under C.R.S. § 8-13.3-408.

10. Before commencing this civil action, Plaintiff submitted a Complaint to the Colorado Division of Labor Standards and Statistics on May 5, 2022, pursuant to C.R.S. § 8-13.3-411(4)(d). Plaintiff also submitted two written demands for compensation to Defendant UPS on May 12 and 17, 2022, pursuant to C.R.S. § 8-13.3-411(4)(d).

EXHIBIT C

# FACTUAL ALLEGATIONS

## Collective Bargaining Agreement

11. Defendant UPS operates a facility in Commerce City. Employees of the Commerce City worksite are unionized members of Local 455. Union members are subject to two related Collective Bargaining Agreements titled: "NATIONAL MASTER UNITED PARCEL SERVICE AGREEMENT" ("CBA") and "Teamsters Central Region and UNITED PARCEL SERVICE Supplemental Agreement to the NATIONAL MASTER UNITED PARCEL SERVICE AGREEMENT" ("Central Region CBA").

12. As stated in ARTICLE 2. SCOPE OF THE AGREEMENT of the CBA: "[a]ll employees covered by [the CBA] and the various Supplements, Riders and Addenda thereto, shall constitute one (1) bargaining unit."

13. The CBA and Central Region CBA both took effect on August 1, 2018, and are in effect through July 31, 2023.

14. Upon information and belief, the CBA and Central Region CBA apply to all of Defendant's unionized employees in Colorado.

15. In ARTICLE 22. FULL-TIME COMBINATION AND PART-TIME EMPLOYEES of the CBA, regular full-time package drivers (known as "RPCDs") working a Monday through Friday schedule "shall be guaranteed five (5) consecutive days of eight (8) consecutive hours per report and forty (40) straight time hours of straight time pay each week, if reporting each day as scheduled, as long as work is available."

16. According to ARTICLE 22 of the CBA, Defendant UPS was to shift RPCDs with Tuesday through Saturday schedules to Monday through Friday schedules within eighteen months of the CBA's ratification.

17. Also in ARTICLE 22 of the CBA, full-time combination drivers (known as "22.4 Combination Drivers") "shall be guaranteed eight (8) consecutive hours of straight time pay per day, if reporting as scheduled." And: "All 22.4 combination drivers shall work a five (5) consecutive day schedule of Tuesday through Saturday or Wednesday through Sunday."

18. Pursuant to ARTICLE 16 – VACATIONS of the Central Region CBA, employees receive paid vacation benefits dependent on their years of service with Defendant UPS.

19. An employee who has completed one year of employment receives one week of paid vacation leave.

3

EXHIBIT C

20. An employee who completes two years to seven years of employment receives two weeks of paid vacation leave.

21. An employee who completes eight years of employment receives three weeks of paid vacation leave. And so on.

22. In addition, ARTICLE 16 – VACATIONS of the Central Region CBA provides that "any seniority employee having completed his/her eligibility year shall receive one (1) additional week of vacation with fifty (50) straight-time hours' pay January 1st of each year. Part-time employees shall receive twenty-five (25) hours for said week. (Note: This week of vacation is in lieu of previously negotiated optional holidays and sick days.)"

23. ARTICLE 16 – VACATIONS does not provide paid vacation benefits of any kind to employees who have not completed one year of employment.

24. Under ARTICLE 16 – VACATIONS, an employee's time off because of sickness or off-the-job injury counts towards the employee's vacation time up to four weeks.

25. The scheduling requirements for vacation time under ARTICLE 16 – VACATIONS unreasonably interfere with an employee's ability to use vacation time for sick leave.

26. In ARTICLE 15 – HOLIDAYS of the Central Region CBA, all "seniority employees (including part-time employees) shall receive two (2) optional holidays as provided above. (Note: One (1) of the optional holidays is in lieu of the negotiated sick day, effective the same date.)"

27. Other than as detailed in these allegations, the Central Region CBA does not otherwise reference sick days, sickness, or sick leave.

## Colorado Healthy Families and Workplaces Act

28. Starting on January 1, 2021, HFWA began to require employers with sixteen or more employees to provide its employees with paid sick leave.

29. Pursuant to HFWA, employees of employers with sixteen or more employees began to accrue one hour of paid leave per thirty hours worked, up to forty-eight hours per year.

30. Pursuant to HFWA, employees could use accrued sick leave for a variety of reasons, including: any mental of physical illness, injury, or health condition that prevents work; diagnosis, care, or treatment of such conditions; preventive care (including vaccination); needs due to suffering domestic violence, sexual abuse or criminal harassment; or caring for family with such conditions or needs.

4

EXHIBIT C

31. HFWA's requirement of accrued sick leave did not apply to bona fine collective bargaining agreements in effect on July 14, 2020, if the "collective bargaining agreement provides for equivalent or more generous paid sick for the employees covered by the collective bargaining agreement."

32. Pursuant to HFWA, employers are not required to provide additional paid sick leave if they have paid time off policies that specifically provide leave for HFWA and non-HFWA purposes.

33. Defendant UPS has failed to comply with HFWA by not providing paid sick leave to employees subject to the CBA and Central Region CBA. Throughout 2021 and most of 2022, Defendant UPS had no policy providing for accrued sick leave in accordance with HFWA. Throughout 2021 and most of 2022, when employees submitted requests for paid sick leave for illness, injury, or other health conditions, supervisors informed them that UPS did not provide paid sick leave. Defendant UPS denied requests by employees for compensation for time off for employee or family member illness, injury, or other health conditions.

### Defendant's Employment of Mr. Rietheimer

34. Defendant UPS began employing Mr. Rietheimer on October 28, 2020 as a 22.4 Combination Driver. His primary duties are preparing and loading a delivery truck and driving the truck on a route delivering the packages along the way.

35. Defendant UPS assigns Mr. Rietheimer to work from its Commerce City worksite. Mr. Rietheimer clocks in and out of the Commerce City Worksite and picks up packages to be delivered from the Commerce City worksite.

36. Defendant UPS typically employs Mr. Rietheimer for ten-hour shifts five days a week.

37. Defendant UPS pays Mr. Rietheimer and other workers subject to the CBA by the hour and issues payment to them on a weekly basis.

### Defendant UPS Denies Mr. Rietheimer Paid Sick Leave

38. Defendant UPS did not pay Mr. Rietheimer for about two days of sick leave he used in 2021.

39. On April 30, 2022, one of Defendant's supervisors at the Commerce City worksite received a call from Mr. Rietheimer explaining that he woke up with something that felt like food poisoning and requesting a paid sick day. The supervisor told Mr. Rietheimer that UPS did not provide paid sick leave.

40. On his paycheck for the week that included April 30, 2022, Defendant UPS did not pay Mr. Rietheimer for the sick day he took on April 30, 2022. Defendant listed on Mr. Rietheimer's timecard that his absence on April 30, 2022 was a "layoff."

EXHIBIT C

41. Because Mr. Rietheimer works Tuesdays through Saturdays with Sundays and Mondays off, Mr. Rietheimer was not scheduled to work on May 1 and 2, 2022.

42. Mr. Rietheimer did not feel well on May 1 and 2, 2022.

43. Mr. Rietheimer took a test for Covid-19 on May 2, 2022.

44. On May 3, 2022, Mr. Rietheimer continued to not feel well.

45. On May 3, 2022, Mr. Rietheimer called Defendant UPS to inform the supervisor who answered the phone that he was not feeling well and had taken a Covid-19 test. He asked to use a day of paid sick leave. The supervisor on the phone told Mr. Rietheimer that he would have to contact his Union Steward about that.

46. Mr. Rietheimer took sick days on May 3 and 4, 2022. Defendant UPS did not pay Mr. Rietheimer for the sick days he took on May 3 or 4, 2022.

47. On May 4, 2022, Mr. Rietheimer emailed Teamsters Local 455's Business Agent, Scott Anderson, about the unpaid sick days he took on April 30, May 3, and May 4, 2022.

48. Mr. Anderson emailed Mr. Rietheimer back on May 4, 2022, with Steven Varima included on the email. Mr. Anderson stated that: "The Colorado HFWA is a state program and outside of our contract...Issues or concerns with the HFWA should be followed up with the state of Colorado."

49. Mr. Anderson also wrote that: "With that being said, we have had success getting the company to pay sick days under the HFWA utilizing the grievance procedure."

50. Mr. Rietheimer filed a Complaint with the Colorado Division of Labor Standards and Statistics ("DLSS") on May 5, 2022. Mr. Rietheimer's Complaint described unpaid sick days he took in 2021 and 2022.

51. Defendant UPS did not compensate Mr. Rietheimer for his sick days in 2022 within fourteen days of the CDLE providing Defendant with Plaintiff's filed DLSS Complaint.

52. Mr. Rietheimer filed a grievance with Defendant UPS on May 12, 2022, addressing his unpaid sick day on April 30, 2022.

53. Mr. Rietheimer filed another grievance with Defendant UPS on May 17, 2022, addressing his unpaid sick days on May 3 and 4, 2022.

54. Defendant UPS did not compensate Mr. Rietheimer for his unpaid sick days on April 30, May 3, and May 4, 2022 within fourteen days of either grievance.

6

EXHIBIT C

55. Defendant UPS has not compensated Mr. Rietheimer for his unpaid sick days in 2021.

**Defendant UPS Denies Mr. Rietheimer Eight Hours of Straight-Pay Per Day Worked**

56. Starting in October 2022, Defendant UPS stopped paying Mr. Rietheimer eight hours of straight-pay per day worked, in violation of ARTICLE 22. FULL-TIME COMBINATION AND PART-TIME EMPLOYEES in the CBA.

57. Instead, Defendant UPS began paying Mr. Rietheimer for hours worked, which in some instances paid him less than eight hours of straight-pay per day worked.

58. Mr. Rietheimer has twice requested that Defendant UPS correct this underpayment error. Defendant UPS has not.

59. Defendant UPS has also failed to pay some or all RPCDs their straight-pay guaranteed under ARTICLE 22 of the CBA.

60. Some of the RPCDs and 22.4 Combination Drivers have filed grievances with Local 455.

## CLASS ALLEGATIONS

61. Plaintiff asserts his claims as Colo. R. Civ. P. 23 class actions on behalf of himself and on behalf of the classes he seeks to represent.

62. Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the classes as follows:

> **HFWA Class:** Residents of Colorado who were employed with Defendant UPS in 2021 and/or 2022 and not provided paid sick leave.
>
> **Full-Time Class:** Residents of Colorado who were employed with Defendant UPS since September 1, 2022, as RPCDs or 22.4 Combination Drivers as defined by Article 22 of the CBA.

63. The putative HFWA Class is estimated to include about 6,000 individuals across Colorado who worked for Defendant UPS. Therefore, the putative HFWA Class is so numerous that joinder of all potential class members is impracticable.

64. There are questions of law or fact common to the putative HFWA Class that are common and predominate over any individual that might exist. Common questions of law and fact include:

7

EXHIBIT C

    a. Whether the Central Region CBA complies with HFWA's requirements for bona fide collective bargaining agreements in effect on July 14, 2020.

    b. Whether Defendant UPS was required to modify the Central Region CBA to give employees one hour of paid sick leave for every thirty hours worked, up to forty-eight hours per year.

    c. Whether the Central Region CBA provides any paid sick leave to Defendant UPS's employees.

    d. Whether Defendant UPS could legally require current or former employees to file grievances to receive paid sick leave.

65. Plaintiff asserts a claim for the putative HFWA Class that is typical of the claims of all potential class members.

66. Plaintiff will fairly and adequately protect and represent the interests of the putative HFWA Class because:

    a. Plaintiff and class members are employees of Defendant UPS.

    b. Plaintiff and class members are subject to the Central Region CBA.

    c. Plaintiff and class members did not, but should have, accrued paid sick leave in 2021 and through the date of this filing.

    d. Plaintiff and class members were sick at times throughout 2021 and 2022; Defendant required Plaintiff and class members to take unpaid sick leave throughout 2021 and 2022.

67. Questions of law or fact common to the members of the putative HFWA Class predominate over any questions affecting individual members.

68. A class action for the putative HFWA Class is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy.

69. Plaintiff is unaware of any member of the putative HFWA Class who is interested in presenting claims in a separate action.

70. Plaintiff is unaware of any pending litigation commenced by a member of the putative HFWA Class.

EXHIBIT C

71. It is desirable to concentrate the litigation of the putative HFWA Class in this forum because the law at issue only impacts Defendant's Colorado employees.

72. This class action will not be difficult to manage due to the uniformity of claims among members of the putative HFWA Class and the susceptibility of these claims to both class litigation and the use of representative testimony and representative documentary evidence.

73. Plaintiff has no interest that is adverse to the putative HFWA Class or members of the putative HFWA Class.

74. The putative Full-Time Class includes RPCDs and 22.4 Combination Drivers at the Commerce City worksite, which upon information and belief, is approximately 200 or more employees. Therefore, the putative Full-Time Class is so numerous that joinder of all potential class members is impracticable.

75. There are questions of law or fact common to the putative Full-Time Class that are common and predominate over any individual that might exist. Common questions of law and fact include:

    a. Whether the CBA entitles the Full-Time Class members to eight hours of pay for each day worked even when Defendant UPS does not assign employees eight hours of work.

    b. Whether Defendant UPS has uniformly failed to pay Full-Time Class members eight-hours straight-time pay on days where they worked less than eight consecutive hours.

76. The claim for the putative Full-Time Class asserted by Plaintiff is typical of the claims of all potential class members.

77. Plaintiff will fairly and adequately protect and represent the interests of the putative Full-Time Class because:

    a. Plaintiff is an employee of Defendant UPS as are the class members.

    b. Plaintiff is subject to the CBA as are the class members.

    c. Plaintiff was not paid straight pay like the class members.

    d. Like the class members, Plaintiff did not, but should have, received eight hours of straight-time pay on days when Defendant UPS assigned him less than eight consecutive hours of work.

78. Questions of law or fact common to the members of the putative Full-Time Class predominate over any questions affecting individual members.

EXHIBIT C

79. A class action for the putative Full-Time Class is superior to other available methods for the fair and efficient adjudication of this controversy because numerous identical lawsuits alleging similar or identical causes of action would not serve the interests of judicial economy.

80. Plaintiff is unaware of any member of the putative Full-Time Class who is interested in presenting claims in a separate action.

81. Plaintiff is unaware of any pending litigation commenced by a member of the putative Full-Time Class.

82. It is desirable to concentrate the litigation of the putative Full-Time Class in this forum because upon information and belief, this particular violation of the CBA only applies to Defendant UPS's Colorado employees.

83. This class action will not be difficult to manage due to the uniformity of claims among members of the putative Full-Time Class and the susceptibility of these claims to both class litigation and the use of representative testimony and representative documentary evidence.

84. Plaintiff has no interest that is adverse to the putative Full-Time Class or members of the putative Full-Time Class.

85. Plaintiff is represented by counsel experienced in litigating class action claims.

86. The prosecution of separate actions by the individual putative class members of the HFWA Class and Full-Time Class would create a risk of inconsistent or varying adjudications with respect to individual potential class members that would establish incompatible standards of conduct for Defendant.

87. Many members of the HFWA Class and Full-Time Class have claims that are relatively small. Thus, the interest of potential class members in individually controlling the prosecution or defense of separate actions is slight. In addition, public policy supports the broad remedial purposes of class actions in general and pertinent state laws are appropriate vehicles to vindicate the rights of those employees with small claims as part of the larger class.

88. Certification of the HFWA Class and Full-Time Class under Rule 23(b)(3) of the Colorado Rules of Civil Procedure is appropriate.

89. Certification of the HFWA Class and Full-Time Class under Rule 23(b)(2) of the Colorado Rules of Civil Procedure is also appropriate because Defendant UPS acted on grounds generally applicable to the classes thereby making appropriate injunctive relief with respect to the classes as a whole.

90. Plaintiffs request certification of the classes under Rule 23(b)(3) for monetary damages and Rule 23(b)(2) for equitable relief.

EXHIBIT C

# LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF
Violations of the Colorado Healthy Families and Workplaces Act
Plaintiff on behalf of himself and all HFWA Class members against Defendant

91. Plaintiff incorporates all allegations in this pleading into this claim for relief.

92. Defendant UPS is an employer with sixteen or more employees.

93. Because of Defendant UPS's size, Plaintiff and HFWA Class members were supposed to accrue one hour of paid leave per thirty hours worked, up to forty-eight hours per year starting on January 1, 2021.

94. Through 2021 and 2022, Plaintiff and HFWA Class members took time off from work because they or a family member had a mental or physical illness, injury, or health condition that prevented them from working, obtained a medical diagnoses or treatment of such illness, injury, or health condition, or obtained preventive medical care or other qualifying needs for sick leave for the purposes described in C.R.S. §§ 8-13.3-404 to 8-13.3-406

95. Defendant UPS did not give Plaintiff and HFWA Class members paid sick leave throughout 2021. Defendant UPS failed to give Plaintiff and HFWA Class members paid sick leave in 2022 within 14 days of receiving complaints about the failure to provide sick leave.

96. Defendant UPS's violation of the Healthy Families and Workplaces Act caused Plaintiff and HFWA Class members to suffer damages.

### SECOND CLAIM FOR RELIEF
Violations of the Colorado Wage Claim Act
Plaintiff on behalf of himself and the HFWA Class members against Defendant

97. Plaintiff incorporates all allegations in this pleading into this claim for relief.

98. HFWA defines paid sick leave as "wages" under the Colorado Wage Claim Act.

99. Defendant made deductions from the wages of Plaintiff and HFWA Class members for what Defendant should have paid as paid sick leave.

100. Defendant owes these deductions as "wages" under C.R.S. § 8-4-101(14)(a) to Plaintiff and HFWA Class members under C.R.S. § 8-4-103(a).

11

EXHIBIT C

101. Defendant's failure to pay Plaintiff and HFWA Class members these wages within fourteen days of service of this Complaint entitles Plaintiff and HFWA Class members to their unpaid wages, penalties, and attorneys' fees.

### THIRD CLAIM FOR RELIEF
Colorado Wage Claim Act
Plaintiff on behalf of himself and the Full-Time Class members against Defendant

102. Plaintiff incorporates all allegations in this pleading into this claim for relief.

103. Defendant agreed to pay Plaintiff and Full-Time Class members eight hours of straight-time pay for each day worked, regardless of actual hours worked.

104. Since September 2022, Defendant has failed to pay Plaintiff and Full-Time Class members these wages, instead paying Plaintiff and Full-Time Class members a lower wage.

105. The difference in the agreed upon wage and what Defendant has been paying constitutes "wages" under C.R.§ 8-4-101(14)(a) and owed under C.R.S. § 8-4-103(a).

106. Defendant's failure to pay Plaintiff and Full-Time Class members these wages within fourteen days of service of this Complaint entitles Plaintiff and Full-Time Class members to their unpaid wages, penalties, and attorneys' fees.

### **REQUESTED RELIEF**

107. Plaintiff respectfully asks this Court to grant the following relief:

   a. Economic damages, including unpaid wages;
   b. Liquidated damages;
   c. Equitable relief;
   d. Penalties under C.R.S. § 8-4-109(3)(b)
   e. Attorneys' fees;
   f. All costs incurred by Plaintiff in bringing this action;
   g. Pre-judgment and post-judgment interest at the highest lawful rate; and
   h. Any other legal or equitable relief the Court may deem just and proper.

Respectfully submitted this 1st day of January, 2023, by:

    LOWREY PARADY LEBSACK, LLC

    */s/ Sara N. Maeglin*
    Sara N. Maeglin
    J. Bennett Lebsack

EXHIBIT C