**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-477-NRN

BRANDON RIETHEIMER
And those similarly situated,

    Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,

    Defendant.

---

### RESPONSE TO MOTION TO DISMISS PLAINTIFF'S THIRD CLAIM FOR RELIEF

---

Defendant United Parcel Service, Inc. employs Plaintiff Brandon Rietheimer and his coworkers to drive trucks and deliver and retrieve packages in Colorado. Defendant is subject to the Colorado Wage Claim Act, a statutory scheme that provides minimum labor standards to prevent and remedy wage theft. The key requirement of the Wage Act is that an employer pay its employees wages it owes them.

Defendant uses a Collective Bargaining Agreement to provide its rate of pay to employees, like Mr. Rietheimer. The CBA provides that if Mr. Rietheimer works any part of a day, he gets paid for eight hours.

For most of Defendant's employment of Mr. Rietheimer, it paid him his daily wages as required. But in October 2022, it stopped paying Mr. Rietheimer his wages, paying him less than eight hours per day. In his Third Claim for Relief, Mr. Rietheimer seeks to recover those earned wages and associated penalties under the Wage Act. Defendant seeks to dismiss that claim, arguing

that Section 301 of the Labor Management Relations Act preempts the claim because: (1) his Wage Act claim is a breach of contract claim in disguise; and (2) his Wage Act claim requires extensive interpretation of its terms.

Allegations supporting a Wage Act claim may also provide the factual basis for a breach of contract claim. But Section 301 does not preempt a claim simply because the claim shares the facts of a preempted claim. And Section 301 does not preempt a claim that merely references the terms of a CBA, particularly when those terms are unambiguous and provide the rate of pay.

Because Mr. Rietheimer has plausibly alleged a claim under the Wage Act, but Defendant has not plausibly articulated how Mr. Rietheimer's claim involves a genuine interpretive dispute over a provision in the CBA, the Court should deny the Motion to Dismiss.

## RELEVANT FACTS

Defendant has employed Mr. Rietheimer as a 22.4 Combination Driver since October 28, 2020. (First Am. Compl. ¶ 15.) In the CBA, such drivers "shall be guaranteed eight (8) consecutive hours of straight time pay per day, if reporting as scheduled." (*Id.* at ¶ 32.)

From the start of his employment in October 2020 until October 2022, Defendant paid Mr. Rietheimer eight hours of straight-pay for each day he worked. (*See id.* at ¶ 64.) Defendant stopped paying these wages in October 2022. (*Id.*)

## LEGAL STANDARD

Defendant generally articulates the correct standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6), but on motions raising Section 301 preemption, the Court should adhere to the standard set forth in *Rueli v. Baystate Health, Inc.*, 835 F.3d 53, 55 (1st Cir. 2016), cited by Defendant in its Motion. A finding of preemption, and any resulting dismissal, should only occur if

there is a "plausible argument . . . that adjudicating plaintiffs' claims will require the resolution of a genuine interpretive dispute about one or more provisions of the CBA." *Id.*

## LEGAL ARGUMENTS

**I.      Section 301 Does Not Preempt Claims Under State Laws Involving Minimum Labor Standards.**

Section 301(a) of the Labor Management Relations Act of 1947 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

While there are Tenth Circuit decisions addressing Section 301 preemption that provide guidance, none articulate a holding that binds this court. So, the Supreme Court's extensive, binding analysis of Section 301 cases deserves significant attention. In *Allis-Chalmers Corporation v. Lueck*, a case alleging a tort of bad faith, the Supreme Court held that Section 301 preempts claims based on "state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties." 471 U.S. 202, 213 (1985). But the Court clarified that it did not "hold that every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is pre-empted by § 301." *Id.* at 220.

In a workers' compensation retaliation case, the Court clarified that "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor [ ]law principles [ ]necessarily uniform

3

throughout the Nation [ ]must be employed to resolve the dispute." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988) (citing *Teamsters v. Lucas Flour Co.*, 369 U.S. 95 (1962)).

In that case, *Lingle v. Norge Division of Magic Chef, Inc.*, the Court explained:

> We agree with the court's explanation that the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause. But we disagree with the court's conclusion that such parallelism renders the state-law analysis dependent upon the contractual analysis. For while there may be instances in which the National Labor Relations Act pre-empts state law on the basis of the subject matter of the law in question, § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Id.* at 408–10. So, even if a plaintiff's claim alleges facts relevant to a breach of contract claim, Section 301 does not necessitate preemption.

*Lingle* cited to the Court's prior emphasis in *Fort Halifax Packing Co. v. Coyne* that "preemption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State" and because "establishment of a minimum labor standard does not impermissibly intrude upon the collective-bargaining process." *Id.* at 412 (citing *Coyne*, 482 U.S. 1, 21–23 (1987)).

In *Livadas v. Bradshaw*, a case alleging violation of California's wage law, the Court reiterated its prior holdings on the preemption issue, stating:

> [*Lueck* and *Lingle*] underscored the point that § 301 cannot be read broadly to preempt nonnegotiable rights conferred on individual employees as a matter of state law, and we stressed that it is the legal character of a claim, as "independent" of rights under the collective-bargaining agreement (and not whether a grievance arising from "precisely the same set of facts" could be pursued) that decides whether a

4

> state cause of action may go forward. Finally, we were clear that when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished. A collective-bargaining agreement may, of course, contain information such as rate of pay . . . that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled.

512 U.S. 107, 123–24 (1994) (quotations and internal citations omitted).

Refined over the years, Supreme Court precedent on Section 301 requires courts to consider if a claim rests on an independent statutory right involving minimum labor standards, and if so, if resolving the claim requires interpretation of a genuinely disputed term in the CBA.

## II.     The Wage Act Provides a Minimum Labor Standard Independent of Contract.

The Wage Act requires that an employer pay its employees what it owes them lest it commit wage theft. No contract needed.

The Wage Act applies to "wages," which it defines as:

> All amounts for labor or service performed by employees, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculating the same or whether the labor or service is performed under contract, subcontract, partnership, subpartnership, station plan, or other agreement for the performance of labor or service if the labor or service to be paid for is performed personally by the person demanding payment. No amount is considered to be wages or compensation until such amount is earned, vested, and determinable, at which time such amount shall be payable to the employee pursuant to this article.

C.R.S. § 8-1-101(14)(a)(I). Under the Wage Act, when an employer decides to pay wages to an employee for work performed in the state of Colorado, the employer is subject to liability if it commits wage theft. Such claims do not depend on a CBA or any other contract; they depend on the employment relationship. Indeed, the title for the bill that most recently amended the Wage Act was "Concerning the Modernization of Procedures for the Enforcement of Laws Governing the Employer-Employee Relationships. . ." S.B. 22-161.

5

The Wage Act is "a comprehensive statutory scheme designed to ensure the payment of employees' earned wages in a timely manner." *Nieto v. Clark's Mkt., Inc.*, 488 P.3d 1140, 1143 (Colo. 2021) (citing *Cagle v. Mathers Fam. Tr.*, 295 P.3d 460, 469 (Colo. 2013). If an employer does not pay wages owed to an employee, the employee can bring an action in court on behalf of the employee and similarly situated employees to recover those wages, and penalties, attorneys' fees, and costs. C.R.S. § 8-4-109(3)(a).[1] The Wage Act "nullifies any effort to circumvent its requirements by contract, providing that 'any agreement . . . by any employee purporting to waive or to modify such employee's rights in violation of this article shall be void.'" *Nieto*, 488 P.3d at 1144 (citing C.R.S. § 8-4-121). This anti-waiver provision voids arbitration agreements, *Lambdin v. Dist. Ct. In & For 18th Jud. Dist. of Cnty. of Arapahoe*, 903 P.2d 1126, 1130 (Colo. 1995), and forum selection clauses. *Morris v. Towers Fin. Corp.*, 916 P.2d 678, 679 (Colo. App. 1996).

### III.     Section 301 Does Not Preempt Wage Theft Claims under the Wage Act.

The closest Section 301 case to this one is *Leonard v. McMorris*. 106 F. Supp. 2d 1098 (D. Colo. 2000), *rev'd on other grounds, Leonard v. McMorris*, 320 F.3d 1116 (10th Cir. 2003). In *Leonard*, the employer terminated the plaintiffs after it filed for bankruptcy. *Id.* at 1104. At the time of termination, the employer did not pay plaintiffs for wages earned, therefore violating the Wage Act. *Id.* at 1104–05. The employer argued that Section 301 preempted plaintiffs' unpaid wages claim because "determination of the amounts due to plaintiffs [would] require that the court interpret various provisions of the collective bargaining agreements." *Id.* at 1116. The *Leonard* court disagreed, holding that the plaintiffs' claim for unpaid wages (and, ostensibly, for penalties

---

[1] The Colorado Legislature amended the Wage Act in 2022 to permit civil actions by current employees. Previously, civil remedies were limited to former employees. 2022 Colo. Legis. Serv. Ch. 370 (S.B. 22-161).

6

and attorneys' fees) was not preempted because the Wage Act gave employees non-waivable, non-negotiable rights, and because the employer failed to identify provisions in the CBAs requiring the court to do more than "look at, consider, and apply the provisions with the use of a calendar, employee's personnel records, and a calculator." *Id.* at 1119–20 (citing C.R.S. § 8-4-124).

In *Murray v. United Parcels Serv., Inc.*, the Court held that Section 301 did not preempt a claim under New York's wage theft law, explaining that although the CBA "may create parameters and entitlements for UPS employees related to work hours and wages, the resolution of these claims do not depend on the meaning of the CBAs and the [New York law] supplies a right to compensation that is entirely independent of any contractual rights afforded to Plaintiffs." No. 20-CV-1427 (MKB), 2022 WL 4468295, at *11 (E.D.N.Y. Sept. 25, 2022). And in *Chu v. Chinese-American Planning Council Home Attendant Program, Inc.*, the court noted that courts "have routinely held that the sort of unpaid wage and notice claims under [state law] alleged here are 'legally independent' of wage-related provisions in a CBA and are therefore not preempted by the LMRA." 194 F. Supp. 3d 221, 228–29 (S.D.N.Y. 2016).

In *Wilson-Davis v. SSP America, Inc.*, the court held that Section 301 did not preempt claims under California's wage theft law because it only had to reference the CBA to determine owed compensation for unpaid minimum wages, overtime pay, meal periods, and rest breaks. 434 F. Supp. 3d 806, 813-816 (C.D. Cal. 2020) ("It is not enough for Defendants to provide a laundry list of provisions that they allege the Court must interpret to resolve Plaintiff's claims; Defendants must explain *why* interpretation, as opposed to mere reference to the CBA, is necessary."). And in *Densmore v. Mission Linen Supply*, the court held that Section 301 did not preempt plaintiff's

7

claims under California's wage law because there was "no clear dispute in the terms of the CBA[.]." 164 F. Supp. 3d 1189, 1189–95 (E.D. Cal. 2016) (citations omitted).

*Leonard* and the other federal cases illustrate that broad Section 301 preemption would mean employers could evade Colorado's wage theft law by including all terms related to pay in their CBAs. If Section 301 were to preempt Wage Act claims because a CBA provides rates of pay, an employer could effectively require employees to waive compliance with the Wage Act. *Leonard* states the issue precisely: that if it extended "the preemption doctrine to allow for preemption by virtue of such a waiver parties would be able to immunize themselves from suit under state laws of general applicability by simply including their unlawful behavior in a labor contract." 106 F. Supp. 2d. at 1119 (internal quotation marks omitted and citations omitted).

### IV.     Mr. Rietheimer's Wage Theft Claim Does Not Involve Interpretation of the CBA.

Mr. Rietheimer's wage theft claim plausibly alleges that Defendant was required to pay him for eight hours each day he worked, but, starting in October 2022, it did not.[2] The claim does not turn on contract interpretation but depends on whether: (1) Mr. Rietheimer worked any hours on a given day; and (2) Defendant paid him for eight hours each day he worked.

Here, as in *Lingle*, the CBA "may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled." 486 U.S. at 413. And as such, Mr. Rietheimer's claim references the CBA's rate of pay term, that full-time combination drivers "shall be guaranteed eight (8) consecutive hours of straight time pay per day, if reporting as scheduled." (First Am. Compl. ¶¶

---

[2] Aside from its preemption arguments, Defendant does not argue that Mr. Rietheimer failed to articulate a plausible claim. Defendant does not argue that if Section 301 does not apply, Mr. Rietheimer's claim should still be dismissed for failure to state a claim.

32 and 111.) There is no dispute that Mr. Rietheimer reported as scheduled or what "reporting as scheduled" means, at least not one that Defendant identifies. And Mr. Rietheimer does not claim that he made himself available as scheduled but was not given work; rather, he claims he was not paid wages for the work he performed.

Defendant cites words like "guaranteed" to show the complexity of the claim. It also cites portions of the CBA that it contends require interpretation to resolve Mr. Rietheimer's wage theft claim, the provisions that 22.4 Combination Drivers "shall work a five (5) consecutive day schedule" and that RPCD drivers "shall be guaranteed five (5) consecutive days of eight (8) consecutive hours per report and forty (40) straight time hours of straight time pay each week, if reporting each day as scheduled, as long as work is available." (Mot. to Dism. 2.) But Mr. Rietheimer's claim does not relate to these provisions, so the terms "per report" and "as long as work is available" are not relevant to the claim or this Motion.[3]

And the meaning of "guaranteed" and "straight time" are not genuinely in dispute. Defendant identifies these terms but fails to articulate how this Court must do anything more than "refer to or look at" them in the CBA. *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1036 (9th Cir. 2016). Indeed, Defendant understood the meaning of this provision and complied with the Wage Act by paying the eight hours of straight time until October 2022 when it abruptly stopped. (First Am. Compl. ¶ 64.) This case does not require interpretation of a provision in the CBA about whether Mr. Rietheimer performed compensable work entitling him to compensation

---

[3] This provision may be relevant to the "RPCD" portion of a class's claim under the Wage Act, but at this stage, Defendant seeks to dismiss Mr. Rietheimer's claim on an individual basis. His claim does not relate to that provision. And if it did, those terms are unambiguous.

for a certain day. Instead, it requires a reference to the CBA to determine his pay rate, and review of his paystubs to determine if he worked on a day and if he was paid eight hours for that day.

V.     **Section 301 Preempts Claims Requiring Interpretation of Disputed CBA Terms.**

In support of its Motion, Defendant cites *Mowry v. United Parcel Service*. 415 F.3d 1149 (10th Cir. 2005). That case held that Section 301 preempted a claim for "shorted wages," where a truck driver submitted a timecard for 13.32 hours that included nearly three hours for an unreported break at a rest stop during a storm. *Id.* at 1150–51. The employer had two supervisors following the plaintiff's truck, so it fired him for dishonesty on his timecard (and presumably did not pay for those three hours). *Id.* at 1051. The decision does not reference the Wage Act. Based on its sole paragraph briefly analyzing Section 301, the court treats the claim like one for breach of contract, explaining that the CBA exclusively resolved the shorted wages issue because it provided the limited circumstances when an employee, like the plaintiff, was "entitled to be paid" for delays. *See id.* at 1157. The court explained it would have to interpret the CBA "to determine what work [plaintiff] performed, when he worked, whether delays occurred and, if so, whether he was entitled to be paid for those delays." *Id.* The determination of whether the plaintiff was entitled to pay for the hours he sat at the rest stop was inextricably intertwined with interpretation of the CBA's paid-delay policy. *Id.* Although the court does not quote the relevant CBA in *Mowry*, presumably whether an employee performed work, whether a delay occurred, and whether that work or time waiting on a delay is compensable required interpretation of disputed terms of the CBA.

In contrast, to determine Mr. Rietheimer's claim, the court need only determine *when* he worked. Even if this Court would have to determine, as the *Mowry* court addressed, "what wages

10

he should have been paid, what wages he actually was paid, whether he was underpaid, and, if so, the amount of the shortfall," it could do so referencing, not interpreting, the CBA. *See id.*

Defendant also cites *Kobold*, which consolidated three cases concerning Section 301 preemption. 832 F.3d 1024, 1031 (9th Cir. 2016). *Kobold* held that Section 301 preempted some state law claims, but not others. *Id.* at 1048.

In the first case, the CBA provided that employees would be paid one-half times their regular rate for hours above their regularly scheduled shifts unless the employer and employee agreed to a schedule change. *Id.* at 1035. The parties disputed whether a "conspicuous notice" that the shifts would be paid at the regular rate constituted an agreed upon schedule change. *Id.* at 1035–36. But the CBA did not explain what constituted a schedule change or how an agreement between employer and employee was to be made. *Id.* Because the court would have to read interpretations of those terms into the CBA, it held that Section 301 preempted the claim. *Id.* at 1036.

In the second case, the plaintiff alleged violation of an Oregon wage theft law requiring an employer to remit insurance premiums within seven days of when the wages were due. *Id.* at 1040. Despite the CBA providing the source of the employer's agreement to pay the monthly contributions, the court held that Section 301 did not preempt the claim. *Id.* As in this case, the Defendant listed several issues purportedly requiring interpretation of the CBA to resolve, but the court rejected the argument because the CBA was unambiguous in addressing those issues. *Id.*

In the third, less relevant case, the court held that Section 301 preempted a tortious interference claim where a prior arbitrator award found that the claim arose from the CBA. *Id.* at 1047.

Defendant also cites *Rueli v. Baystate Health, Inc.*, which held that Section 301 preempted a state law claim involving whether work performed outside of shifts was compensable because

the claim required the court to resolve a "genuine interpretive dispute" about the CBA. 835 F.3d 53, 55 (1st Cir. 2016). The claim required proof of knowledge of unpaid work and an employer's duty to know about unscheduled work, which turned on examining whether the CBA required the employer to look beyond time sheets; if the employer could rely on a CBA provision stating work hours could not be changed without the employer's permission; whether a different term did not require permission for every unscheduled hour worked; and the effect of a CBA provision giving the employer the right to set schedules. *Id.* at 62–65.

And Defendant cites *Atchley v. Heritage Cable Vision Associations*, which held that Section 301 preempted a claim for a late bonus under Indiana law. 101 F.3d 495, 500 (7th Cir. 1996). The court held that the "the CBA required interpretation, not mere reference, to determine when the wage increases and bonuses were to be implemented and paid" and were even late. *Id.* at 499.

Section 301 preempts cases requiring interpretation of ambiguous CBA terms. This is not one of those cases.

## CONCLUSION

Section 301 preempts a claim alleging breach of a CBA or claims requiring genuine interpretation of a CBA's terms. It does not preempt a claim simply because the facts could also support a breach of contract claim or because the court must reference an unambiguous provision in the CBA to resolve the claim. Mr. Rietheimer's Third Claim for Relief alleges that Defendant stopped paying him the wages it owed him in violation of the Wage Act, a minimum standard of labor generally not preempted by federal labor law. The claim does not depend on interpretation of any terms of the CBA; it merely requires this Court to reference an unambiguous provision about what

Defendant should have paid Mr. Rietheimer for days worked. Accordingly, Section 301 does not preempt the claim, and the Court should deny the Motion to Dismiss.

Respectfully submitted this 29th day of March, 2023.

                                                LOWREY PARADY LEBSACK, LLC

                                                *s/ Sara N. Maeglin*
Sara N. Maeglin
J. Bennett Lebsack
1490 Lafayette St., Suite 304
Denver, CO 80218
Email: sm@lowrey-parady.com
Tel. (303) 593-2595
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing **RESPONSE TO MOTION TO DISMISS PLAINTIFF'S THIRD CLAIM FOR RELIEF** was electronically filed using the CM/ECF system on this 29th of March, 2023, which will send notification of such filing to all counsel of record as follows:

T. Markus Funk
mfunk@perkinscoie.com

Daniel Graham
dgraham@perkinscoie.com

*Attorneys for Defendant*


                                      *s/ Carol Allen*
                                      Carol Allen